## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FERNANDO NUNEZ, JR., | : | Civil No. 1:21-CV-01484 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN J. WETZEL, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### **MEMORANDUM**

Before the court is Defendants' motion to dismiss the amended complaint in the above captioned action.  (Doc. 20.)  Plaintiff Fernando Nunez, Jr. ("Plaintiff") is an inmate currently housed at the State Correctional Institution Mahanoy in Frackville, Pennsylvania ("SCI-Mahanoy"), and is self-represented in this 42 U.S.C. § 1983 action.  For the reasons discussed below, Defendants' motion will be granted.  Defendants Werenorwicz and the Pennsylvania Department of Corrections will be dismissed as parties to this action.  The First Amendment retaliation claims against Defendants Wetzel, Mason and Matello will be dismissed without prejudice.  The First Amendment retaliation claim against Defendant Dunkle will be dismissed with prejudice.  The Eighth Amendment claim against Defendant Matello will be dismissed without prejudice.  The First and Fourteenth Amendment claims against Defendants Wetzel and Little regarding the mail policy

are improperly joined and will be dismissed without prejudice. Plaintiff will be given an opportunity to file a curative amended complaint.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action in August of 2021, naming ten defendants and bringing a First Amendment retaliation claim, an Eighth Amendment deliberate indifference claim, a 29 U.S.C. § 794 Rehabilitation Act claim, and a Title II claim under the Americans with Disabilities Act (ADA). (Doc. 1.) Defendants filed a motion to dismiss on March 11, 2022. (Doc. 12.) As a response, Plaintiff filed a motion to amend the complaint in April 28, 2022. (Doc. 15.) The court granted the motion and filed the amended complaint, which is the operative complaint in this matter. (Docs. 17, 18.)

The amended complaint raises claims under the First Amendment, Eighth Amendment, Fourteenth Amendment, the Violence Reduction Initiative Policy, the Religious Land Use and Institution led Persons Act ("RLUPIA"), and the ADA. (Doc. 18.) It names seven defendants: (1) John E. Wetzel ("Wetzel"), former Secretary of the Department of Corrections ("DOC"); (2) George M. Little ("Little"), current Secretary of the DOC; (3) Michael Wenerowicz ("Wenerowicz"), Regional Security of the DOC; (4) Bernadette Mason ("Mason"), Facility Manager Superintendent at SCI-Mahanoy; (5) Michael Dunkle ("Dunkle"), a Security Captain at SCI-Mahanoy; (6) S. Matello ("Matello"), a

Corrections Officer at SCI-Mahanoy; and (7) the Pennsylvania DOC. (*Id*.) Defendants filed a motion to dismiss the amended complaint on May 12, 2022 and a brief in support on May 26, 2022. (Docs. 20, 22.)

In response, Plaintiff filed a notice of voluntary dismissal and a motion to dismiss claims one through eight of his complaint. (Docs. 21, 26.) This court granted Plaintiff's request to dismiss claims one through eight on August 8, 2022 to allow Plaintiff to file a separate action. (Doc. 30.) In doing so, all claims brought under the Violence Reduction Initiative Policy, the RLUPIA, and the ADA were dismissed. The remaining claims raised in the operative complaint include a First Amendment retaliation claim against Defendants Wetzel and Mason based on his vaccination status, a First Amendment retaliation claim against Defendant Dunkle in violating his settlement agreement with the DOC, a First Amendment retaliation claim against Defendant Matello regarding verbal complaints Plaintiff made against him, an Eighth Amendment deliberate indifference claim against Defendant Matello for calling him a "rat" in front of other inmates, and a First Amendment access to the courts claim and Fourteenth Amendment due process claim against Defendants Wetzel and Little regarding the mail policy. (Doc. 18, pp. 28–43.)[1]

---

[1] For ease of reference the court utilizes the page numbers from the CM/ECF header.

Plaintiff then filed a brief in opposition on August 25, 2022.  (Doc. 31.)
Defendants did not file a reply.  Defendants' motion to dismiss the amended
complaint is now ripe and will be addressed by the court.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. §
1331, which allows a district court to exercise subject matter jurisdiction in civil
cases arising under the Constitution, laws, or treaties of the United States.  Venue
is proper in this district because the alleged acts and omissions giving rise to the
claims occurred at SCI-Mahanoy, located in Schuylkill County, Pennsylvania,
which is located within this district.  *See* 28 U.S.C. § 118(b).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible
on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.
v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the
plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting
*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to
survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.
2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint

4

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See*

5

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile.  *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245.  A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

**DISCUSSION**

### A. Defendants Wenerowicz and the Pennsylvania DOC Will Be Dismissed As Defendants.

Following the voluntary dismissal of claims one through eight by Plaintiff, there are no claims remaining against Defendants Wenerowic or the Pennsylvania DOC[2].  (Doc. 18.)  Therefore, both will be dismissed as parties in this action.

### B. The First Amendment Retaliation Claims Against Defendants Wetzel and Mason Regarding Vaccination Status Will Be Dismissed.

Plaintiff raises a First Amendment retaliation claim against Defendants Wetzel and Mason.  (Doc. 18, pp. 28–34.)  Specifically, Plaintiff alleges that

---

[2]Furthermore, it is well-settled that neither a state nor its agencies are considered a "person" as that term is defined under § 1983 and are not subject to a § 1983 suit.  *Hafer v. Melo*, 502 U.S. 21, 25–27 (1991).  Therefore, the Pennsylvania DOC is also not a proper defendant in a 42 U.S.C. § 1983 action.

Defendant Wetzel recorded three "Fire-Chat" informational videos, which were broadcast on SCI-Mahanoy's inmate information channel. (*Id.*, p. 28.)  In the last "Fire-Chat," on August 5, 2021, Defendant Wetzel directed all state correctional institutions to place all unvaccinated inmates on an isolated housing unit separate and apart from other inmates who have chosen to be vaccinated. (*Id.*)  He alleges that Defendant Wetzel stated that inmates who refuse to be vaccinated will not receive contact visits, attend law library, the gym, or programing, but those who get vaccinated will receive such privileges. (*Id.*)  Plaintiff alleges that this amounted to a vaccine mandate that did not consider or honor medical or religious accommodations as a legitimate reason to not get vaccinated. (*Id.*)

Plaintiff alleges that he refused to get fully vaccinated and sought a religious accommodation and a medical accommodation. (*Id.*)  He states that as a consequence of refusing to get vaccinated and the "Fire-Chat" order from Defendant Wetzel, he was removed from his housing unit and was placed on an "unvaccinated unit" with no law library computer access, visits, or other privileges. (*Id.*)  Plaintiff states that he and his family spoke out against this vaccine mandate. (*Id.*, pp. 28–29.)  He alleges that as a result of exercising his First Amendment rights of free speech and free exercise of religion, he was placed in an unvaccinated housing unit and his privileges for recreation, law library, contact visits, job opportunities, and programming was limited or denied. (*Id.*, p. 29.)  He

alleges that these "retaliatory adverse actions" served no legitimate penological interest because the officers working the unvaccinated housing unit where he was housed did not wear face masks, were not vaccinated themselves, and the CDC sanitation standards were not followed. (*Id.*)

Plaintiff further alleges that Defendant Mason was aware of the above alleged facts. (*Id.*, p. 31.) He also alleges that Defendant Mason knew that Plaintiff had filed an inmate abuse complaint challenging the DOC's failure to impose a vaccine mandate on prison officers prior to August 8, 2021. (*Id.*) Plaintiff alleges that Defendant Mason knew the science behind the spread of COVID-19 including that individuals who have tested positive for the virus in the past can be reinfected and that vaccinated individuals can be infected and spread the disease. (*Id.*) He asserts that even with this knowledge, Defendant Mason did not challenge Defendant Wetzel's vaccine mandate. Plaintiff alleges that Defendant Mason threated to issue misconducts or placement in solitary confinement to unvaccinated inmates who refused to move to an unvaccinated unit. (*Id.*, p. 32.)

Plaintiff alleges that he was "compelled" to take his first dose of the Moderna vaccine and within hours suffered an adverse side effect that left him in pain. (*Id.*) Plaintiff alleges that he then submitted a disability accommodation to refuse the second Moderna dose, which was denied by Defendant Mason. (*Id.*) He alleges that Defendant Mason then took immediate adverse action against him by

8

having him moved to an unvaccinated housing unit on September 3, 2021, where he stayed until April 7, 2022.  (*Id*.)  Plaintiff alleges that Defendant Mason retaliated against him for exercising his First Amendment rights of free speech, the right to petition, and the free exercise of religion.  (*Id*., p. 33.)

A prisoner asserting a retaliation claim bears the initial burden of proving the elements of a case of retaliation: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  Following a plaintiff's success in establishing his *prima facie* case for retaliation, the burden shifts to the defendant to prove by a preponderance of the evidence that "it would have taken the same disciplinary action even in the absence of the protected activity."  *Id*.  "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  *Id*.

Defendants do not challenge Plaintiff's *prima facie* allegation of relation, and instead alleges that the policy of housing vaccinated and unvaccinated

prisoners separately was reasonably related to a legitimate government interest. (Doc. 22, pp. 4–8.)

The court must defer to the broad discretion granted to prison authorities in their attempt to control the spread of Covid-19 within their facility. That is, even "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987). "Because it is difficult to social distance in a correctional setting, the Court cannot second guess where authorities move those who test positive, those who refuse to be vaccinated, those who are more vulnerable to serious complications should they contract Covid-19, and those who recover from Covid-19." *Jones v. County of Allegheny*, No. 21-1094, 2022 WL 2806779, at *7 (W.D. Pa. Jun. 24, 2022). The court recognizes that the range of difficult issues confronting authorities during the Covid-19 pandemic was extensive, and will not disturb the administrative decision about how to house and manage the inmate population during the pandemic. Therefore, the retaliation claims raised against Defendants Wetzel and Mason will be dismissed with prejudice.

### C. The First Amendment Retaliation Claim Against Defendant Dunkle Will Be Dismissed.

In the amended complaint, Plaintiff raised a separate First Amendment retaliation claim against Defendant Dunkle. (Doc. 18, p. 34–35.) He alleges that

on July 8, 2021, he approached Defendant Dunkle and asked him why he and his brother could not be housed in the same unit. (*Id*., p. 34.) He alleges that Defendant Dunkle said, "[b]ecause I said so," and he asked "[w]hy not? There is no separation between us because it was removed by central office." (*Id*.) Plaintiff alleges that Defendant Dunkle responded with "I'm aware of your settlement agreement with the DOC. And it doesn't say your brother will be housed in the same unit as you. Your settlement got him to this institution and as long as I'm here I'm gonna make sure you both will never be on the same unit. I can promise you that." (*Id*.)

Plaintiff alleges that this is evidence that Defendant Dunkle took adverse action against him and his brother by fabricating a security concern to justify keeping him and his brother from being housed in the same unit. (*Id*.) He states that Defendant Dunkle "acted outside the scope of his duties by retaliating against Nunez and his brother, as direct result of engaging in constitutionally protected conduct under the First Amendment to petition and seek redress with the Court." (*Id*.) He alleges that Defendant Dunkle knew of Plaintiff's prior lawsuit and settlement with the DOC that required a separation between him and his brother to be removed from their files and his brother to be transferred from SCI-Phoenix to SCI-Mahanoy. (*Id*., p. 35.) Plaintiff states that this adverse action against him and his brother is retaliation and serves no legitimate penological interest. (*Id*.)

As set forth above, a prisoner asserting a retaliation claim bears the initial burden of proving the elements of a case of retaliation: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser*, 241 F.3d at 333; *see also Mitchell*, 318 F.3d at 530.

It is undisputed that petitioning the government for redress is a constitutionally protected First Amendment right. *See Mirabella v. Villard*, 853 F.3d 641, 653 (3d Cir. 2017). Therefore, Plaintiff's allegation that his prior lawsuit and resulting settlement with the DOC was constitutionally protected conduct meets the first element of a retaliation claim.

The second element requires Plaintiff to credibly assert that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Plaintiff has failed to allege facts sufficient to meet this element. Plaintiff alleges that Defendant Dunkle refused his request to be housed in the same unit as his brother and states that he fabricated a security reason to prevent them from being housed together. (Doc. 18, p. 35.) There is no allegation that there was any formal punishment against Plaintiff. Furthermore, he admits that he does "not have a particular right to be housed on the same housing unit" as

his brother.  (*Id.*)  Therefore, Plaintiff has failed to allege that he suffered a sufficient adverse action.

The third element requires Plaintiff to allege that the constitutionally protected conduct was a substantial or motivating factor for the adverse action.  On this element, Plaintiff has failed to establish the required causal connection between his prior lawsuit and Defendant Dunkle.  "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  Here, Plaintiff has failed to allege that the previous lawsuit was an action against Defendant Dunkle.  This court has previously found insufficient causal connection when the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity.  *See Calloway v. Bauman*, No. 2:20-cv-2337, 2022 WL 4357468, at *9 (M.D. Pa. Sep. 20, 2022) *citing Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *also citing Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others."); *also citing Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in

favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity). Therefore, Plaintiff has failed to plead the third element of a retaliation claim.

Based on Plaintiff's failure to properly plead the second and third elements of a retaliation claim, his First Amendment claim against Defendant Dunkle will be dismissed without prejudice.

### D. The Eighth Amendment and First Amendment Claims Against Defendant Matello Will Be Dismissed.

Plaintiff raises an Eighth Amendment deliberate indifference claim and a First Amendment retaliation claim against Defendant Matello. (Doc. 18, pp. 36–39.) In the compliant, Plaintiff alleges that on August 6, 2021, his housing unit was placed on lockdown so that medical staff could vaccinate inmates. (*Id.*, p. 36.) Plaintiff alleges that he was filling out an inmate abuse complaint form against Defendant Wetzel for imposing the vaccine mandate on inmates and not on staff when he verbally complained to Deputy White that Defendant Matello was working in his unit and not wearing a mask and another non-defendant correctional officer was openly bragging about not being vaccinated. (*Id.*) Plaintiff alleges that Defendant Matello heard his verbal complaints and yelled out, "[i]s he ratting on staff again?" (*Id.*, p. 37.)

Plaintiff alleges that he then requested to speak with Deputy White in her office. (*Id.*) Once in her office, Plaintiff refused to take the Johnson and Johnson

vaccine citing a heart condition, but agreed take the first dose of the Moderna

vaccine.  (*Id.*)  Plaintiff alleges that after leaving the office, Deputy White told

Defendant Matello that he did not have to be moved to the unvaccinated unit

because he was going to receive the first dose of the Moderna vaccine later that

day.  (*Id.*)

      He states that a few hours later, non-defendant Sergeant Adams told him to

pack up because he was being moved to the unvaccinated unit.  (*Id.*)  Plaintiff

alleges that he told Sergeant Adams that Deputy White had said he didn't have to

move and that Defendant Matello had been told the same.  (*Id.*)  He alleges that he

yelled out his cell door asking Defendant Matello why he did not inform Sergeant

Adams that he was not required to move to the unvaccinated unit.  (*Id.*)  Plaintiff

states that Defendant Matello responded with "[y]ou still fucking ratting? Just pack

your shit up.  You['re] moving.  Period."  (*Id.*)

      Plaintiff alleged he then put a sheet on his cell door, and Defendant Matello

proceeded to climb the stairs towards Plaintiff's cell, removed his O/C spray can

from his belt, and said "I'm tired of this asshole."  (*Id.*)  Plaintiff then alleges that

he removed the sheet from his door to talk to the other corrections officer and

Defendant Matello began shaking his O/C spray can and told that corrections

officer to do the same saying, "[f]uck him! Spray him! Spray him!"  (*Id.*, p. 38.)

The other corrections officer then told Defendant Matello that Plaintiff had not

done anything to get spray and to "chill out." (*Id.*)  Plaintiff alleges that Defendant

Matello than stated that "[t]his guy is a fucking rat!  He ratted on me and C/O

Woods to Deputy White about not wearing our face mask and not being

vaccinated.  I want his ass of[f] the block one way or another." (*Id.*)  The other

corrections officer then asked Defendant Matello about Plaintiff's claims that

Deputy White said he did not have to be moved, and Defendant Matello responded

with "I don't know what she told that [r]at." (*Id.*)  The other corrections officer

then called the medical staff and confirmed that there was a notation on their

computer that Plaintiff did not have to be moved to the unvaccinated unit. (Id.)

Plaintiff alleges that labeling him a rat in front of other inmates placed him

in a substantial risk of harm that resulted in Plaintiff engaging in a fist fight with

another inmate. (*Id.*, p. 39.)  He also alleges that his constitutionally protected

conduct of making a verbal complaint against Defendant Matello was a substantial

or motivating factor that caused Defendant Matello to take adverse action against

him that served no legitimate penological interest. (*Id.*, pp. 38–39.)

## 1.  Eighth Amendment Deliberate Indifference Claim

Prison officials violate the Eighth Amendment when they act with

"deliberate indifference to a substantial risk of serious harm to" a prisoner.

*Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994).  The prisoner must show both

that a prison officer ignored an *objectively* serious risk and that he was *subjectively*

aware of that risk. *Id.* at 834.  Several courts have acknowledged the danger of being called a "snitch," or in this case a "rat," in front of other inmates.  *See Williams v. Thomas*, No. 12-01323. 2013 WL 1795578, at *5 (E.D. Pa. April 29, 2013) (summary of cases).

However, this case is distinguished from the cases summarized in *Williams*, all of which involved inmates accused of "snitching" or "ratting" on other inmates. Here, it is clear that Defendant Matello accused Plaintiff of "ratting" on a corrections officer.  The relational difference has been addressed by the Western District of Pennsylvania:

> While prisoners may be motivated to harm a fellow inmate who is or could be informing on them, that motivation for preserving inmate anonymity and solidarity does not exist when the inmate is accused of "snitching" to prison officials about a corrections officer or other prison official—DOC staff who the inmates so often view as opposed to their interests.

*Jackson v. O'Brien*, No. 1:18-cv-00032-RAL, 2021 WL 3174687, at *4 (W.D. Pa. July 27, 2021).  Since Plaintiff has failed to plead a serious risk of harm, his Eighth Amendment claim will be dismissed without prejudice.

### 2.  First Amendment Retaliation Claim

As set forth above, a prisoner asserting a retaliation claim bears the initial burden of proving  the elements of a case of retaliation: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and

(3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser*, 241 F.3d at 333; *see also Mitchell*, 318 F.3d at 530.

The court in *Jackson* extended their analysis of being accused of "snitching" on a correctional officer in a retaliation claim.  2021 WL 3174687, at *5.  In doing so, the court acknowledged that an inmate called a snitch for complaining about other inmates may experience an adverse action, but found that no such adverse action existed when being called a snitch for complaining about correctional officers:

> But an inmate of ordinary firmness does not experience an adverse action when a prison official calls him a snitch for officially or unofficially complaining about other prison officials.  The Court reaches this conclusion for the same reasons stated above that it does not amount to deliberate indifference for a failure to protect claim under the Eighth Amendment to call an inmate a snitch for complaining about prison officials.  Prisoners' possible motivations to harm another inmate believed to be informing on them to protect themselves from discipline and maintain inmate unanimity is not relevant.  Prisoners may even favor an inmate who actively points out prison officials' alleged misconduct.

*Id*.  Therefore, Plaintiff's First Amendment claim against Defendant Matello will be dismissed without prejudice.

18

### E. The First Amendment and Fourteenth Amendment Claims Against Defendants Wetzel and Little Are Improperly Joined and Will Be Dismissed.

Plaintiff alleges that that on April 15, 2021, Plaintiff learned that SCI-Mahanoy's mailroom was rejecting his incoming mail regarding an unrelated case in state court. (Doc. 18, p. 41.) He alleges that he received a copy of his incoming/privileged legal mail log from March 1, 2021 to April 21, 2021 and learned that SCI-Mahanoy's mailroom staff rejected incoming privileged legal mail six times without notifying him. (*Id.*) He also alleges that this caused him to miss two court deadlines in the state court action. (*Id.*) He further alleges that on May 7, 2021, he received another print-out copy of his incoming/privileged legal mail log form April 21, 2021 to May 4, 2021 showing that incoming legal mail sent to him from the Prothonotary Office of Schuylkill County was rejected without notice. (*Id.*) As a result, he alleges that "it frustrated" his ability to meet legal deadlines. (*Id.*, p. 42) He alleges that rejecting incoming/privileged legal mail, without sufficient notice or procedural due process is unconstitutional under the First and Fourteenth Amendments. (*Id.*, p. 41.)

Plaintiff alleges that Defendants Wetzel is liable for implementing the mail policy that permits the mailrooms within the DOC to reject incoming privileged mail and Defendant Little is liable for continuing to enforce the same mail policy. (*Id.*, p. 42.)

Defendant argue for dismissal of this claim because it is improperly joined, and they also assert that they are entitled to qualified immunity. (Doc. 22.) Plaintiff conceded that this claim is improperly joined and agreed that the claim should be severed. (Doc. 31, p. 18.)

A plaintiff may not bring unrelated claims against unrelated parties in a single action. *See* Fed. R. Civ. P. 18(a); 20(a)(2). A plaintiff may bring a claim against multiple defendants so long as (1) the claims arise out of the same transaction or occurrence, or series of transactions and occurrences; and (2) there are common questions of law or fact. *See* Fed. R. Civ. P. 20(a)(2). Courts have broad discretion in applying Fed. R. Civ. P. 20 to reduce inconvenience, delay, and added expense to the parties and to the court, and to promote judicial economy. *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. *See, e.g., Pruden v. SCI Camp Hill*, 252 Fed.Appx. 436 (3d Cir. 2007) (nonprecedential).

The alleged interference with Plaintiff's mail is unrelated to the other facts alleged in the complaint. By joining multiple events into a single action, the court questions whether Plaintiff is attempting to fit as much as possible into a single filing fee. This will not be permitted. *See Robinson v. Delbalso*, No. 1:20-CV-1171, 2020 WL 5602932, at *3 (M.D. Pa. Sep. 18, 2020) ("Instead of joining

unrelated claims, a plaintiff's remedy is to file a separate lawsuit.").  Plaintiff

conceded this point and agreed that the claim should be severed.  (Doc. 31, p. 18.)

Therefore, these claims will be dismissed without prejudice to Plaintiff raising

them in a separate action.

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss will be granted.

Plaintiff will be granted an opportunity to timely amend his complaint as a matter

of course as discussed in *Phillips*, but only in regards to the claims that were

addressed on their merits in this memorandum.  Plaintiff is free to file a separate

lawsuit regarding the mail policies.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 6, 2023