# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FERNANDO NUNEZ, JR., | : | Civil No. 1:21-CV-01484 |
| Plaintiff, | : | |
| v. | : | |
| JOHN J. WETZEL, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Defendants' motion to dismiss the second amended complaint. (Doc. 37.) Plaintiff Fernando Nunez, Jr. ("Plaintiff") is an inmate currently housed at the State Correctional Institution Mahanoy in Frackville, Pennsylvania ("SCI-Mahanoy"), and is self-represented in this 42 U.S.C. § 1983 action. For the reasons discussed below, Defendants' motion will be granted in part. The Eighth Amendment deliberate indifference claim and the First Amendment retaliation claim associated with Defendant Matello allegedly calling Plaintiff a "rat" will be dismissed with prejudice. The Eighth Amendment deliberate indifference claim associated with Defendant Matello allegedly encouraging another inmate to attack Plaintiff will not be dismissed and will survive Defendant Matello's Fed. R. Civ. P. 12(b)(6) challenge.

1

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action in August of 2021, naming ten defendants and bringing a First Amendment retaliation claim, an Eighth Amendment deliberate indifference claim, a 29 U.S.C. § 794 Rehabilitation Act claim, and a Title II claim under the Americans with Disabilities Act (ADA).  (Doc. 1.)  Defendants filed a motion to dismiss on March 11, 2022.  (Doc. 12.)  As a response, Plaintiff filed a motion to amend the complaint on April 28, 2022.  (Doc. 15.)  The court granted the motion, filed the amended complaint, and denied the motion to dismiss as moot.  (Docs. 17, 18.)

The amended complaint raised claims under the First Amendment, Eighth Amendment, Fourteenth Amendment, the Violence Reduction Initiative Policy, the Religious Land Use and Institution led Persons Act ("RLUPIA"), and the ADA against seven defendants.  (Doc. 18.)  Defendants filed a motion to dismiss the amended complaint on May 12, 2022 and a brief in support on May 26, 2022.  (Docs. 20, 22.)  In response, Plaintiff filed a notice of voluntary dismissal and a motion to dismiss claims one through eight of his complaint.  (Docs. 21, 26.)  The court granted Plaintiff's request to dismiss claims one through eight on August 8, 2022, to allow Plaintiff to file a separate action.  (Doc. 30.)  In doing so, all claims brought under the Violence Reduction Initiative Policy, the RLUPIA, and the ADA were dismissed.  The remaining claims raised in the amended complaint were

dismissed by the court on March 6, 2023, and Plaintiff was granted another opportunity to amend his pleading. (Doc. 33.)

On April 10, 2023, the court received and docketed Plaintiff's second amended complaint. (Doc. 34.) The second amended complaint is the operative complaint in his action and brings claims against one defendant: S. Matello ("Matello), a Corrections Officer at SCI-Mahanoy. (*Id*.) Plaintiff alleges that on August 6, 2021, his housing unit was temporarily put on medical lockdown so that medical staff could vaccinate inmates or obtain medical waivers from those who refused the COVID-19 vaccine from Johnson and Johnson. (*Id*., ¶ 4.) At 8:30 a.m., Plaintiff was told to exit his cell and stand on the top tier where Deputy White was waiting to speak with him. (*Id*., ¶ 5.) In a conversation with Deputy White, Plaintiff allegedly declined to take the Johnson and Johnson vaccine based on his pre-existing heart condition, stated that he had filed an inmate abuse complaint with his unit manager, and stated that his family had filed a complaint with central office because Department of Corrections ("DOC") staff were not wearing their face masks or telling other inmates to wear their masks on the unit. (*Id*., ¶ 6.) Deputy White allegedly informed Plaintiff that staff was already aware of his inmate abuse allegations, which would not be investigated, and that all SCI-Mahanoy staff had been reminded to wear their face masks. (*Id*., ¶ 7.) Plaintiff alleges that he specifically told Deputy White "[s]o why Matello doesn't have his

3

face mask on right now? He allows inmates to walk around the housing unit without their mask on and even tells his block workers not to clean the showers, tables, or phones after every cohort group has their block out." (*Id.*, ¶ 8.) Plaintiff alleges that Defendant Matello, who had witnessed Plaintiff's conversation, yelled out "[i]s he ratting on staff again?" (*Id.*, ¶ 9.) Plaintiff alleges that after Defendant Matello's comment, other inmates in his housing unit yelled out their cell doors "You Fuckin Rat." (*Id.*, ¶ 10.)

Plaintiff alleges that that he and Deputy White went to a nearby office to speak with medical staff, and he was told that, as a result of his heart condition, the Moderna vaccine could be given instead of the Johnson and Johnson vaccine. (*Id.*, ¶ 11.) Plaintiff agreed to the Moderna vaccine. (*Id.*) He alleges that when he left the office, Deputy White told Defendant Matello, "[d]on't place Nunez on the list to move to F block. Medical will call him this evening to take the Moderna vaccine." (*Id.*, ¶ 12.) Defendant Matello then responded by yelling "Why is he getting special treatment. Everybody else took the J&J vaccine." (*Id.*, ¶ 13.) Plaintiff alleges that Deputy White stated that "[h]e has a medical condition. That's what we've been instructed to do by central office." (*Id.*) Plaintiff alleges that Defendant Matello's exchange with Deputy White was heard and witnessed by every inmate in the housing unit, which prompted inmates to yell out "[w]hy did medical offer that rat the Moderna vaccine and not us?" (*Id.*, ¶ 14.)

4

Plaintiff alleges that a few hours later, Sergeant Adams told Plaintiff to pack because he was moving to F block. (*Id.*, ¶ 16.) Plaintiff alleges that he responded by yelling into his cell intercom, "Deputy White said I don't have to move because I'm waiting on medical to call me down to take the Moderna shot. Ask Matello. Deputy White told him not to put me on the move list." (*Id.*) He alleges that he then yelled out his cell door, "Matello! Why did you place my name on the move list. Deputy White told you I don't have to move. Tell [Sergeant] Adams that [Deputy] White said I don't have to move to F block?" (*Id.*, ¶ 17.) Plaintiff alleges that Defendant Matello yelled back, "[you] still fuckin ratting? Just pack your shit. You['re] moving. Period." (*Id.*, ¶ 18.)

Plaintiff alleges that he refused to pack up and placed a privacy screen up to use the bathroom. (*Id.*, ¶ 19.) He alleges that Defendant Matello yelled up to another unnamed corrections officer to order plaintiff to remove his privacy screen and pack up immediately. (*Id.*) Plaintiff allegedly told the unnamed officer that he was using the bathroom and would take the screen down when he was finished, and that Deputy White said he did not have to move because medical had made a notation in his file about it. (*Id.*, ¶ 20.) Plaintiff alleges that while he was speaking to the unnamed officer, Defendant Matello walked up the steps and removed his OC spray can from his waist belt, while stating "I'm tired of this asshole," and started to shake his OC spray can and "expressing his intent to spray the Plaintiff."

5

(*Id*., ¶ 21.) The unnamed officer asked Defendant Matello "[w]hy do you want to spray him? He hasn't done anything to get sprayed. Just chill out." (*Id*., ¶ 22.) Plaintiff alleges that Defendant Matello continued to openly label Plaintiff as a rat in front of staff and other inmates when stating, "[T]his guy is a fucking rat! He ratted on me and C/O Woods to Deputy White about not wearing our face mask and not being vaccinated. I want his ass off the block one way or another." (*Id*., ¶ 23.) The unnamed officer then allegedly asked Defendant Matello, if Deputy White told him that Plaintiff did not have to move, and Defendant Matello replied "I don't know what she said." (*Id*., ¶ 24.) Plaintiff alleges that the unnamed officer called medical to confirm what Deputy White said. (*Id*., ¶ 25.)

Plaintiff further alleges that Defendant Matello used his position of authority to unlock another inmate's cell door when making his round on the unit and instructed this inmate to "fuck Nunez up" while Plaintiff was in his cell. (*Id*., ¶ 44.) He alleges this "hitman" entered his cell, hit his mouth with a closed fist and continued to punch Plaintiff. (*Id*., ¶ 45.) He also alleges that as he fell to the floor, this inmate kicked him. (*Id*.) He alleges that Defendant Matello then told him, "[t]ake this ass [whipping] like a man and get the fuck off my block. You better not way a word about this to no one." (*Id*., ¶ 46.)

6

Based on these facts, the second amended complaint raises an Eighth Amendment failure to protect claim and a First Amendment retaliation claim against Defendant Matello. (*Id.*, ¶¶ 34–53.)

On May 9, 2023, Defendants filed a motion to dismiss the second amended complaint, or in the alternative a motion for summary judgment. (Doc. 37.) Plaintiff filed a brief in opposition. (Doc. 44.) Defendants have not filed a response. Defendants' motion to dismiss the second amended complaint is now ripe and will be addressed by the court.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Mahanoy, located in Schuylkill County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon

8

these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245. A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## DISCUSSION

### A. Defendant Matello's Motion to Dismiss Will Be Granted In Part.

Plaintiff raises the same Eighth Amendment and First Amendment claims against Defendant Matello that were dismissed without prejudice in the court's March 6, 2023 order. (Doc. 33.) Specifically, that calling him a "rat" placed him in foreseeable danger, and violated both the Eighth and First Amendments.

However, he has failed to cure the deficits identified in the memorandum accompanying the March 6, 2023 order. (Doc. 32.) Therefore, these claims will be dismissed. Plaintiff also raised a new Eighth Amendment claim premised on Defendant Matello's alleged encouragement of another inmate to attack Plaintiff. The court will not address each claim, in turn.

### 1. Eighth Amendment Deliberate Indifference Claim

Plaintiff premises his Eighth Amendment deliberate indifference claims on two scenarios. (Doc. 34, ¶¶ 42–43.) The first is that Defendant Matello labeled Plaintiff as a rat in front of other inmates placing his health and safety at risk. (*Id.*, ¶ 42.) The second is that Defendant Matello encouraged another inmate to beat Plaintiff up. (*Id.*, ¶ 43.)

"A prison official's 'deliberate indifference' to a substantial risk of harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citations omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

The Supreme Court has found that an Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be,

objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Id.*  Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 130 (3d Cir. 2001).  This deliberate indifference standard "is a subjective standard under *Farmer*-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id.*  Thus, "[d]eliberate indifference can be shown when a prison official knows of and disregards an excessive risk to inmate health or safety." *Hamilton v. Leavy,* 117 F.3d 742, 747 (3d Cir. 1997).

### i. Labeling Plaintiff As A "Rat"

The court will start by addressing the allegation that Defendant Matello labeled Plaintiff as a "rat," which placed him at an increased risk for violence. Several courts have acknowledged the danger of being called a "snitch," or in this case a "rat," in front of other inmates. *See Williams v. Thomas*, No. 12-01323. 2013 WL 1795578, at *5 (E.D. Pa. April 29, 2013) (summary of cases).

However, this court has already addressed this issue and found that this case is distinguished from the cases summarized in *Williams*, all of which involved inmates accused of "snitching" or "ratting" on other inmates. (Doc. 32, pp. 14–17.)  Plaintiff simply repeats his initial allegations in the second amended

11

complaint. The court again looks to the rationale of the Western District of Pennsylvania:

> While prisoners may be motivated to harm a fellow inmate who is or could be informing on them, that motivation for preserving inmate anonymity and solidarity does not exist when the inmate is accused of "snitching" to prison officials about a corrections officer or other prison official—DOC staff who the inmates so often view as opposed to their interests.

*Jackson v. O'Brien*, No. 1:18-cv-00032-RAL, 2021 WL 3174687, at *4 (W.D. Pa. July 27, 2021). Therefore, the court finds for a second time in this action that Plaintiff has failed to plead a serious risk of harm by alleging that he was labeled a "rat" for reporting DOC staff misconduct. This allegation does not give rise to an Eighth Amendment violation.

In the second amended complaint, Plaintiff appears to try and remedy this deficiency by asserting that "Defendant Matello knew labeling Plaintiff a rat in front of other inmates or telling other inmates that Plaintiff ratted on them (staff and inmates alike) would pose an immediate and obvious risk to Plaintiff's health and safety." (Doc. 34, ¶ 42.) However, the alleged facts do not support the assertion that Defendant Matello labeled Plaintiff a rat for reporting other inmates. The alleged facts include the following three quotes by Defendant Matello: "Is he ratting on staff again?" in response to Plaintiff asking Deputy White why Matello was not wearing a mask; "You still fuckin ratting?" in response to Plaintiff telling Defendant Matello he did not have to move housing blocks; and "This guy is a

fucking rat! He ratted on me and C/O Woods to Deputy White about not wearing our face mask and not being vaccinated." (*Id.*, ¶¶ 9, 18, 23.) Plaintiff failed to allege any facts in the operative complaint to support his present assertion that Defendant Matello accused him of reporting on other inmates in front of other inmates.

As a result, this Eighth Amendment claim will be dismissed. Since Plaintiff failed to cure this pleading defect in his second amended complaint after it was identified in the order dismissing the first amended complaint, the court finds that any further opportunities to cure the defect would be futile. Therefore, this claim will be dismissed with prejudice.

### ii. Encouraging a Violent Attack

However, Plaintiff's Eighth Amendment claim based on the allegation that Defendant Matello actively encouraged another inmate to violently attack him will survive the motion to dismiss. Defendant Matello does not move for dismissal of the Eighth Amendment claim premised on these facts. (Doc. 40.) Instead, he seeks to have the motion to dismiss converted into a motion for summary judgment, and requests the court consider a selected number of grievance filings to find that Plaintiff failed to exhaust his administrative remedies. (*Id.*)

The Third Circuit held in *Renchenski v. Williams* that, before converting a motion to dismiss to a motion for summary judgment in a case brought by a *pro se*

13

prisoner, a court must provide the prisoner "with a paper copy of the conversion Order, as well as a copy of Rule 56," and a short summary explaining its importance that highlights the utility of a Rule 56(d) affidavit if the plaintiff needs to forestall resolution of the motion to obtain additional discovery.  622 F.3d 315, 340 (3d. Cir. 2010).  The court did not provide such notice in this action.

>Federal Rule of Civil Procedure 12(d) provides as follows:
>
>If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).  However, the Third Circuit has also held that when "the exhaustion issue turns on the indisputably authentic documents related to [Plaintiff]'s grievances, we hold that we may also consider these without converting it to a motion for summary judgment."  *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2018); *see Couthinho-Silva v. Ramirez*, No. 3:17-CV-00378, 2017 WL 5588211 at *6–7 (M.D. Pa. Nov. 2, 2017) (noting that the Third Circuit has limited review of grievances without conversion so as to address issues of exhaustion and procedural default).

 However, the court notes that the evidence presented is limited to the grievances that Jennifer Mahally, Grievance Coordinator at SCI-Mahanoy, deemed relevant: "Counsel for the Department requested I review the grievance records to

determine whether inmate Fernando Nunez, Jr. FM-8959 filed any grievances related, in any way, contained allegations against Officer Matello from August 2021 though December 2021 at SCI-Mahanoy," and "The only grievance Nunez filed which mentioned Matello was grievance no. 942705, dated August 26, 2021." (Doc. 39-2.)  Defendant Matello then attached all documents related to grievance no. 942705.  (Doc. 39-3.)

This is insufficient to allow the court to consider documents outside the complaint without converting the motion to dismiss to a motion for summary judgment under *Spruill*.  Specifically, it is a far too truncated grievance record that was limited at the discretion of another individual employed by the DOC.  Therefore, Plaintiff should have an opportunity to conduct discovery and be given an opportunity to present his entire grievance record before the court considers evidence outside the complaint to determine if Plaintiff properly exhausted his administrative remedies.

The court will not convert Defendant Matello's motion to dismiss into a motion for summary judgment, nor will it consider evidence outside the complaint to determine if Plaintiff properly exhausted his administrative remedies at this stage before the parties conduct discovery.  Therefore, Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Matello for encouraging another inmate to attack Plaintiff will survive the motion to dismiss.

## 2. First Amendment Retaliation Claim

Plaintiff also raises a First Amendment retaliation claim against Defendant Matello in the second amended complaint. (Doc. 34.)

A prisoner asserting a retaliation claim bears the initial burden of proving the elements of a case of retaliation: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Following a plaintiff's success in establishing his *prima facie* case for retaliation, the burden shifts to the defendant to prove by a preponderance of the evidence that "it would have taken the same disciplinary action even in the absence of the protected activity." *Rauser*, 241 F.3d at 333. "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id*. at 334.

Previously, the court found that Plaintiff did not state a retaliation claim because being called a "rat" for complaining about correctional officers does not have a foreseeable adverse action, relying on the following excerpt from *Jackson*:

> But an inmate of ordinary firmness does not experience an adverse action when a prison official calls him a snitch for officially or unofficially complaining about other prison officials. The Court reaches this conclusion for the same reasons stated above that it does not amount to deliberate indifference for a failure to protect claim under the Eighth Amendment to call an inmate a snitch for complaining about prison officials. Prisoners' possible motivations to harm another inmate believed to be informing on them to protect themselves from discipline and maintain inmate unanimity is not relevant. Prisoners may even favor an inmate who actively points out prison officials' alleged misconduct.

(Doc. 32, p. 18) (quoting *Jackson,* 2021 WL 3174687, at *5). Therefore, the court finds that Defendant's Matello's alleged actions of calling Plaintiff a "rat" for reporting on officers does not equate to an adverse action under *Rauser*. Plaintiff's First Amendment claim against Defendant Matello will be dismissed. Because Plaintiff was given an opportunity to cure this defect in the court's prior order, and failed to do so, further amendment is futile and the court will dismiss this claim with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted in part. Plaintiff's Eighth Amendment deliberate indifference claim and First Amendment retaliation claim associated with Defendant Matello calling him a "rat" will be dismissed with prejudice. Plaintiff's Eighth Amendment deliberate indifference claim premised on Defendant Matello encouraging another inmate to attack Plaintiff will proceed.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: February 13, 2023